## Mohawk Glove Corporation, Appellant, *v.* Philadelphia & Reading Railway Company.

*Carriers—Shortage in shipment—Action for—Evidence—Non-suit.*

In an action of assumpsit against a carrier to recover for a shortage in a shipment of merchandise, a non-suit was properly entered, where the evidence showed that the goods were delivered to plaintiff's drayman in good order and of proper weight, and there was no proof of any negligence on the part of the defendant.

Argued October 20, 1927.   Appeal No. 90, October T., 1927, by plaintiff from judgment of M. C., Philadelphia County, November T., 1923, No. 1268, in the case of Mohawk Glove Corporation v. Philadelphia & Reading Railway Company.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Affirmed.

Assumpsit against a carrier to recover for a shortage in a shipment of goods.   Before BONNIWELL, J.

The facts are stated in the opinion of the Superior Court.

The court entered judgment of non-suit which it subsequently refused to strike off.   Plaintiff appealed.

*Error assigned* was refusal to strike off the non-suit.

*George T. Steeley,* and with him *William A. Carr* and *Sidney L. Krauss,* for appellant.

*George Gowen Parry* of *White, Parry, Schnader and Maris,* for appellee.

·OPINION BY LINN, J., March 2, 1928:

. This appeal from the refusal to take off a compulsory non-suit involves alleged loss from a freight shipment from Philadelphia to New York.   Instead of presenting evidence from which a jury might find that the goods were taken from the boxes while in the custody of the railroad company, appellant, the plaintiff, showed that its authorized drayman in New York received the shipment from the railroad company and receipted for it in good order and of the weight which it should then have had, but delivered it to plaintiff in such condition that the boxes showed that they had been opened.   The question then became: had they been opened after the railroad company delivered them and before plaintiff got them from its drayman?

Plaintiff's superintendent said that when the shipment was delivered at plaintiff's place of business, he observed on the boxes "visible traces of being tampered with"; "nails drawn out, pulled out, boards shifted"; "on some of the cases the straps were off." When the drayman received them from the railroad company a box weighed 206½ pounds—to take a typical case—but when delivered to plaintiff, it weighed 41½ pounds less; in three boxes the shortage between the delivery to plaintiff's drayman and delivery to plaintiff's became 117 pounds. From the delivery date July 25 to August 1, the boxes remained unopened in plaintiff's custody; when opened it was found that a large quantity of hosiery had been taken from them. As the evidence showed delivery of proper weight in good order to the drayman and tampering with the boxes and short weight after delivery to the drayman, there was nothing to show default of the railroad defendant.

The evidence of the condition of the shipment as described in the receipt given by plaintiff's drayman to the railroad company has peculiar importance. For some time before this shipment plaintiffs had found shortages and to locate their origin had notified the drayman not to accept any shipment from the railroad company showing "any visible signs it had been tampered with" without "checking" it, and had also given appropriate notice to the railroad.

We agree with the conclusion stated by the trial judge that the record makes out a prima facie case against plaintiff's drayman in New York, with nothing to go to the jury to show any abstraction from the shipment while in defendant's custody. The non-suit was right.

Judgment affirmed.